IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOQUIN CESAR GALICIA,

        Plaintiff,

vs.                                                Civ. No. 13-0105 MCA/LAM

THE UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      This case is before the Court upon the United States' Motion for Summary Judgment [Doc. 63]. The Court has considered the motion, the parties' briefs, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below the Court grants the motion in part and denies the motion in part.

      Plaintiff brings this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. The instant motion addresses Plaintiff's claims for false arrest, false imprisonment, malicious prosecution/abuse of process, assault, and battery.[1] Plaintiff's claims arise out of his seizure by the United States Border Patrol and subsequent removal to Mexico, all of which occurred on the evening-morning of May 30-31, 2011.

---

[1] 28 U.S.C.§ 2680(h) provides an exception to liability for certain torts, including assault, battery, false imprisonment, false arrest, malicious prosecution and abuse of process; but this exception is subject to a provisio that restores liability for these torts with respect to investigative or law enforcement officers of the United States.

1

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense --on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As our Court of Appeals has succinctly stated:

> A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations. *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

28 U.S.C. § 1346(b)(1) confers jurisdiction over claims brought under the FTCA in the district courts, which are to apply "the law of the place where the act or omission occurred." The parties agree that New Mexico is the place where the acts or omission at issue occurred.

Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, under the FTCA, the tort liability of a commissioned federal law enforcement officer somewhat anomalously implicates state tort-law standards applicable to private citizens. *See*

2

*generally* Stanton R. Gallegos, Note, *Are Police People Too?  An Examination of the Federal Tort Claims Act's "Private Person" Standard as It Applies to Federal Law Enforcement Activities*,  76 Brook. L. Rev. (Winter, 2011).  Due to a gap in Tenth Circuit authority,  the Court has looked to precedent from other Circuits, and in particular, to cases decided by Second Circuit Court of Appeals in interpreting the "in the same manner and to the same extent as a private individual under like circumstances" language of the FTCA as applied to federal law enforcement officers.  The Second Circuit Court of Appeals has reasoned that the question of whether there is a "private analogue" to the conduct engaged in by the federal defendant is determined by reference to state law. *Liranzo v. United States*, 690 F.3d 78, 91 (2d Cir. 2012).  Thus, for example, the question of whether an unlawful detention is actionable under the FTCA is determined by reference to state law governing false imprisonment by private persons, which determines the elements that the FTCA plaintiff must establish in order to make a prima facie case and the general availability of defenses such as justification or privilege.  *Id.* at 91.  However, in determining whether the detention is justified or privileged, a court may look to federal law.  *Id.* at 92.  By way of  example, consider a Border Patrol agent who stops a vehicle based upon a reasonable suspicion that it is carrying persons who are in the United States illegally.   Private persons  are not routinely authorized by state law to conduct investigative detentions.  *E.g.*, *State v. Benefiel*,  1997 WL 117784 **3-4 (Idaho Ct. App. 1997). *Garner v. State*, 779 S.W.2d 498, 501 (Tex. Ct. App. 1989); *State v. Schuyler*, 390 So.2d 458, 460 (Fla. Dist. Ct. App. 1980).   If justification were measured solely by state law governing citizen's arrests, a Border Patrol agent who conducted a valid *Terry*-stop

could be held liable for false imprisonment, even though the stop was supported by reasonable suspicion and expressly authorized by federal law.  The Second Circuit's reasoning both respects the language of the FTCA as interpreted by the Supreme Court and avoids the absurd result of finding the United States liable for a tort when the federal officer's conduct was authorized by federal law and was consistent with the requirements of the Constitution.  In summary, the Court will look to New Mexico tort law to determine whether New Mexico law recognizes a private analogue.  If a private analogue exists, New Mexico law will determine the elements that the plaintiff must prove and the affirmative defenses available to the defendant.  To the extent that New Mexico law recognizes the defenses of justification or privilege, the Court may refer to federal law to give content to those defenses.

**False Arrest/Imprisonment (Counts I and II)[2]**

Viewing the record in the light most favorable to Plaintiff, as the nonmovant, the Court concludes that a reasonable jury could find as follows.  During the evening of May 30, 2011, at approximately 8:30 p.m., U. S. Border Patrol Agent Timothy Sapieka announced over the radio that he had a "bailout" south of Arrey, New Mexico involving two suspects. [Doc. 63 at 3, ¶ 4; Doc. 80 at 5, ¶ 4] U.S. Border Patrol Agent Juan Serrano, who was patrolling New Mexico Highway 187 south of the Truth or Consequences Border Patrol station, responded to the radio call. [Doc. 80 at 5, ¶ 3]  By the time Agent Serrano arrived at the scene, Agent Sapieka had one of the suspects in custody. [Doc. 80-3 at 2]

---

[2] As an initial matter, the Court must clarify its understanding that although the caption of **Count I** is "False Arrest", the initial detention (leading up to Plaintiff's admission that he was present in the United States illegally) was an investigatory detention and not an arrest, and therefore **Count I** is better understood as a claim of false imprisonment.

The detainee admitted that he and the other suspect were illegally in the United States. Border Patrol Agents searched the surrounding area, but did not capture the second suspect. [Doc. 63-3 at 7] Agent Serrano resumed his patrol along New Mexico Highway 187.

    Sometime before 10:00 p.m., as he approaches the intersection of Highway 187 and Calle Alto in Arrey, Agent Serrano notices a car legally parked off the highway beside a sign advertising a local business. [Doc. 63-3 at 10] This intersection is in the same general area where the suspect escaped earlier in the evening. Although Agent Serrano has no particular reason to think that the parked car is involved in a violation of the immigration laws [Doc. 80-3 at 5], he nevertheless decides to stop and question the occupants of the car. Because it is dark, he cannot immediately tell the race of the occupants. [Doc. 80-3 at 5] He turns around and pulls up behind the car, engaging his emergency lights. [Doc. 80-3 at 5-6] He approaches the car on foot, and identifies himself as a Border Patrol Agent. [Doc. 80-3 at 6] At this point Agent Serrano can tell that the occupants are a young woman and a young man (Plaintiff). Agent Serrano immediately inquires into the young man's citizenship. [Doc. 80-3 at 6] The young man begins to answer, but is cut off by Agent Serrano, who advises the young man that it is a crime to answer untruthfully. [Doc. 80-9 at 3] The young man admits that he is not a United States citizen. [Doc. 80-9 at 3] Agent Serrano takes the young man back to his patrol vehicle and has him sit in the backseat. [Doc. 80-9 at 3] Agent Serrano suspects that Plaintiff is the second suspect who escaped earlier that evening. [Doc. 80-3 at 11] He examines Plaintiff's shoes, apparently looking for signs that Plaintiff has been moving cross-

5

country. [Doc. 80-9 at 3] Agent Serrano calls in on his radio, saying "I think we got the guy. We caught the guy that was running from us." [Doc. 80-9 at 3] Agent Serrano questions the young woman, who produces documentation showing that she is a lawful resident alien. [Doc. 80-3 at 9] Agent Serrano returns to his vehicle and runs a records check on the young woman. [Doc. 80-3 at 9] The records check confirms that the young woman is lawfully present in the United States. [Doc. 80-3 at 9] Based on the young man's admission that he is in the United States illegally, Agent Serrano takes him into custody and transports him to the Border Patrol station in Truth or Consequences. [Doc. 80-3 at 11] Plaintiff is detained at the Border Patrol station for several hours. In the early morning of May 31, 2011, he is transported to El Paso, Texas, where he is turned over to an official from the Mexican Consulate. [Doc. 80-9 at 11] Plaintiff is escorted over a bridge into Mexico. [Doc. 80-9 at 11]

Under New Mexico law, false imprisonment can be a crime, NMSA 1978, § 30-4-3, or a tort, *Dickson v. City of Clovis*, 148 N.M. 831, 837 (Ct. App. 2010) (observing that false imprisonment and false arrest are among the torts as to which immunity is waived by the New Mexico Tort Claims Act). It is important to distinguish the crime from the tort because the crime as defined by § 30-4-3 requires that the defendant have had knowledge of his lack of authority, whereas the tort merely requires that the defendant have lacked actual authority. *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208 n.9 (10th Cir. 2006). The Court is inclined to attribute the equating of the crime and the tort

to occasional analytical laxity rather than to an intention to modify the established elements of the common-law tort.[3]

The Court concludes that there are genuine disputes of material fact as to whether Agent Serrano falsely imprisoned Plaintiff. The first element of false imprisonment is restraint—"interference with the personal liberty or freedom of locomotion of another." *Diaz v. Lockheed Electronics*, 95 N.M. 28, 30 (Ct. App. 1980). New Mexico cases on traffic stops strongly suggest that New Mexico courts would treat Agent Serrano's conduct as a seizure of the occupants of the car. Although the New Mexico Court of Appeals has rejected the position that a seizure occurs every time a police car activates its emergency lights and stops behind a parked car, *State v. Baldonado*, 115 N.M. 106, 109 (Ct. App. 1992), the Court of Appeals also stated that "we find it hard to conceive of a situation where officers activate their emergency lights to investigate a suspicious situation and approach the situation with many accusatory questions in which a reasonably stopped motorist would feel free to leave." *Id.*; *see also State v. Mollett*, No. 97,999, 2008 WL 3852167 (Kan. Ct. App. Jan. 22, 2009) (collecting Kansas authorities); *State v. Williams*, 185 S.W.3d 311, 317-18 (Tenn. 2006) (collecting authorities). "Few, if any, reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for

---

[3] The equating of the tort and the crime can be traced back to Judge Sutin's concurring opinion in *Diaz*, 95 N.M. at 32. Significantly, Judge Sutin did not cite any New Mexico authority for the proposition that the criminal definition of false imprisonment also applies in civil actions. The California case quoted by Judge Sutin for the proposition that "'[t]he Penal Code definition governs in civil as well as criminal actions,'" *id.* at 31-32 (quoting *City of Newport Beach v. Sasse*, 88 Cal. Rptr. 476 (1970)), relied on a California statute providing that false imprisonment "'is the unlawful violation of the personal liberty of another,'" *Sasse*, 88 Cal. Rptr. at 480 (quoting Cal. Penal Code § 236). California Penal Code Section 236 is materially different from § NMSA 1978, 30-4-3, which attaches a *mens rea* of "knowledge" to the element of unlawfulness.

them to remain." *Lawson v. State*, 707 A.2d 947, 951 (Md. Ct. Spec. App. 1998); *State v. Donahue*, 742 A.2d 775, 780 (Conn. 1999) ("The state's argument [that a seizure did not take place] is difficult to sustain in light of its counsel's concession, at oral argument before this court, that under the circumstances in the present case, he—or any other reasonable person—would not have felt free to leave after [the officer] pulled up behind the defendant's car and activated the vehicle's overhead flashing lights."). Here, both factors noted in *Baldonado*—activated emergency lights and immediate resort to accusatory questioning of the occupants— are present. A reasonable jury could find that Agent Serrano intentionally engaged in conduct that led Plaintiff to believe that he and his companion were not free to leave until released by Agent Serrano and that Plaintiff submitted to this show of authority.

Although New Mexico cases are not entirely clear on this point, the absence of probable cause (or reasonable suspicion as the case may be) is not an element of the plaintiff's case: rather, justification is an affirmative defense, which must be proven by the defendant. *Perea v. Stout*, 94 N.M. 595, 600 (Ct. App. 1980) (discussing allocation of burden of proof as to probable cause and "reasonable good-faith belief" in action for false arrest/imprisonment). *Accord Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (N.Y. App. Div. 2010); *Blue v. Harrah's North Kansas City, LLC*,170 S.W.3d 466, 479 n.7 (Mo. Ct. App. 2005) *Rivers v. Dillards Department Store, Inc.*, 698 So.2d 1328, 1331 (Fla. Dist. Ct. App. 1997); *Goodboe v. Gabriella*, 663 P.2d 1051, 1057 (Colo. Ct. App. 1983); *Tucker v. Mammoth Mart Inc.*, 446 A.2d 760, 762 (R.I. 1982); *House v. Ane*, 538 P.2d 320, 325 (Haw. 1975); *Marschall v. City of Carson*, 464 P.2d 494, 497 (Nev. 1970). As the

Missouri Court of Appeals has succinctly observed, "probable cause is the justification for the arrest, and justification is the affirmative defense to false arrest." *Blue*, 170 S.W.3d at 479 n.7. Because justification is an affirmative defense as to which a defendant bears the burden of proof, the ordinary summary judgment standards do not apply to the issue of justification:

> If the movant bears the burden of persuasion at trial on the issue contested in the summary judgment motion, the movant may not meet its initial burden by pointing to the nonmovant's lack of evidence on a contested issue. . . . When the movant bears the burden of persuasion at trial, the movant must produce evidence that would conclusively support its right to a judgment after trial should the nonmovant fail to rebut the evidence. In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment.

11 *Moore's Federal Practice* §56.40[1][c] (3d ed. 2013). Defendant Serrano has not met this stringent burden.

As a Border Patrol agent engaged in a roving patrol away from the border or its functional equivalent, Agent Serrano could not detain a vehicle to inquire into the citizenship of its occupants unless he was "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "The United States is, of course correct that [United States Custom and Border Protection officers] have 'the authority to enforce immigration laws without incurring tort liability.' However, the Agents do not have the *lawful authority* to detain individuals without reasonable suspicion in violation of the United States Constitution." *De La Paz v. United States*, 954 F. Supp. 2d 532, 553 (W.D. Texas

9

2013) (citation to record omitted); *see also Lawal v. McDonald*, 546 Fed. Appx. 107, 111 (3d Cir. 2014) ("Because the Fourth Amendment limits an agent's authority under [8 U.S.C.] Section 1357(1), agents are allowed to detain and interrogate someone under this statute as long as they have a reasonable suspicion that such person is here illegally."). Here, a reasonable jury could find that Agent Serrano seized Plaintiff and the driver without articulable grounds for suspecting them of being illegally in the United States. A reasonable jury that believes Plaintiff's testimony that he was sitting in the car when Agent Serrano stopped his patrol vehicle and activated his emergency lights could find that Agent Serrano had absolutely no information about the race of the persons sitting in the car, and that he stopped behind the car based on a hunch and his mistaken understanding of *Brignoni-Ponce*. The Court concludes that Defendant Serrano has not met his heavy burden of demonstrating that a reasonable jury necessarily would find that his initial seizure of Plaintiff was justified under federal law.

Plaintiff argues that "[s]ince Agent Serrano did not possess reasonable suspicion for the investigative detention, he never had probable cause to arrest Cesar. Therefore, Agent Serrano 'intentionally confined [and] restrained' Cesar without 'justification' or 'lawful authority.'"[4] [Doc. 80 at 27] This argument appears to be based on the assumption that the inculpatory admissions made by Plaintiff during the unlawful investigative detention cannot be considered in determining probable cause. That assumption is incorrect: the exclusionary rule, including the "fruits of the poisonous tree" doctrine, does

---

[4] "A false arrest is merely one way of committing false imprisonment." *Santillo v. N.M. Dept. of Pub. Safety*, 143 N.M. 84, 88 (Ct. App. 2007).

10

not apply in civil tort litigation.  *Turk v. Comerford*,  488 Fed. Appx. 933, 944 (6th Cir. 2012); *Cyrus v. City of New York*,  450 Fed. Appx. 24, 26 (2d Cir. 2011);  *Vigeant v. United States*,  245 Fed. Appx. 23, 24 (1st Cir. 2007);   *Hector v. Watt*, 235 F.3d 154, 158-60 (3d Cir. 2001); *Wren v. Towe*, 130 F.3d 1154, 1158-59 (5th Cir. 1997);  *Dalcour v. Gillespie*,  Civil Action No. 08-cv-00747-MSK-KLM, 2013 WL 2903399 *6 (D. Colo. June 14, 2013).

There is no dispute that Plaintiff admitted to Agent Serrano during the initial investigative detention that Plaintiff  was not a United States citizen and was in the United States illegally.  [Doc. 63-2 at 4]   These admissions provided Agent Serrano with probable cause to believe that Plaintiff was present in the United States in violation of the immigration laws of the United States, providing justification for the arrest and subsequent detention of Plaintiff.   The Court concludes that there is no genuine dispute of material fact as to the affirmative defense of  justification as applied to Agent Serrano's arrest of Plaintiff and the detention subsequent to arrest.

To summarize, the Court finds that there are genuine issues of material fact as to whether the initial detention amounted to false imprisonment.[5]  However, there is no dispute of material fact that in the course of the initial detention, Plaintiff made admissions that gave rise to probable cause to believe that Plaintiff was in the United States in violation of the immigration laws of the United States.  Therefore, the detention of Plaintiff **subsequent** to these statements was lawful and did not constitute false imprisonment or false arrest.

---

[5] See footnote 2.

11

**Malicious Abuse of Process (Count III)**

The administrative process leading to voluntary removal has been characterized as a "formal, documented process." *Rosario-Mijangos v. Holder*, 717 F.3d 269, 279 (2d Cir. 2013). This process includes advising the subject of his rights to an attorney and to a hearing before an immigration judge and obtaining a valid waiver of those rights. *Id.* In the case of a minor, the subject's procedural rights also include the right to consult with an adult prior to being offered voluntary removal. [Doc. 63-7 at 2 ("*[T]hey must not only be given access to a telephone, they must establish communication, telephonic or otherwise, with one of the persons listed in the notice [of rights]* before they can be offered voluntary departure.")] According to Plaintiff, the "Border Patrol did not follow necessary policies, procedures, and legal requirements, such as permitting [Plaintiff] to call his aunt before he signed any documents." [Doc. 80 at 12] The record contains evidence that the Border Patrol Agents who processed Plaintiff believed that Plaintiff was the suspect who had escaped earlier; that the Border Patrol Agents did not fully appreciate that Plaintiff was culturally American, with English his first language; that efforts to advise Plaintiff of his procedural rights were complicated by the use of forms written in Spanish, which Plaintiff had difficulty understanding; that the Agents improperly insisted that Plaintiff sign the consent to voluntary removal prior to allowing Plaintiff to consult with an adult; and that when Plaintiff signed the consent to voluntary removal he did not fully understand his rights, including his right to a hearing before an immigration judge.[6]

---

[6] The Court is not entirely convinced that there is a private analogue to the conduct of Border Patrol agents in failing to insure that Plaintiff's waiver of his rights was knowing and voluntary. *See Saleh v. United States*, No. 12

The New Mexico Supreme Court has merged the formerly independent common-law torts of abuse of process and malicious prosecution, providing in their place a single tort:  malicious abuse of  process.  *Fleetwood Retail Corp. of N.M. v. LeDoux*, 142 N.M. 150, 154 (2007).

> Malicious abuse of process is "defined by the following elements: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. The second element—misuse of process—can be shown in one of two ways: (1) filing a complaint without probable cause, or (2) an "irregularity or impropriety suggesting extortion, delay, or harassment.

*Id.* (citations omitted).

Plaintiff has not cited and the Court has not found a reported  New Mexico appellate decision extending the tort of malicious abuse of process to  abuse of administrative process.  *Carrillo v. Compusys, Inc.*, 132 N.M. 710, 713 (Ct. App. 2002) ("We are unaware of any reported New Mexico decision recognizing that an abuse of process claim can be predicated on abuse of administrative process.").  The Court will assume, without deciding, that the administrative removal process can constitute a "proceeding" for purposes of a malicious abuse of process claim.

The Court's analysis will focus on the second element:  misuse of process.  Here, the undisputed evidence establishes that Plaintiff was in the United States unlawfully.

---

Civ.4598 (KBF), 2013 WL 5439140 *9  (S.D. N.Y. Sept. 27, 2013).  Plaintiff's malicious abuse of process claim can be viewed as a repackaged claim for the denial of due process by the persons charged under federal law with providing that process. *See Barrera-Quintero v. Holder*,  699 F.3d 1239, 1248 (10th Cir. 2012) ("The gravamen of [petitioner's] argument is that he could not voluntarily have left the United States under threat of removal proceedings . . . if he was not meaningfully informed of the legal rights and the consequences of the choices presented to him on the Spanish-language Form I-826.").

Plaintiff's admissions to Agent Serrano established probable cause for Agent Serrano to believe that Plaintiff was subject to voluntary removal, relegating Plaintiff to the "procedural impropriety" method of showing misuse of process. *Santillo v. N.M. Dept. of Public Safety*, 143 N.M. 84, 91 (Ct. App. 2007) (discussing "procedural impropriety" theory of misuse of process). "In the context of this case, the procedural impropriety theory focuses on the question of whether, despite the existence of probable cause, process has been perverted to accomplish an ulterior purpose for which it was not designed." *Id.* This is not a case like *Vaupel v. United States*, No. 11-1348, 491 Fed. Appx. 869 (10th Cir. July 5, 2012) (unpublished decision), where the immigration official presumably would have benefitted personally from the plaintiff's removal from the United States. Here, the administrative process, while arguably flawed, was used for the purpose for which it was initiated: to determine whether Plaintiff wished to exercise his right to a hearing before an immigration judge or to voluntarily return to Mexico. There is absolutely no evidence showing that Plaintiff was subjected to this process for any other purpose than the enforcement of the immigration laws of the United States. The Court concludes that Plaintiff has failed to demonstrate a genuine dispute as to misuse of process element of his claim. Summary judgment is therefore appropriate as to Plaintiff's malicious abuse of process claim.[7]

---

[7] The United States has moved for summary judgment as to Count VI, "Intentional Infliction of Emotional Distress," in a separate motion for summary judgment [Doc.64]. That motion will be addressed in a separate Memorandum Opinion and Order.

**Assault and Battery (Counts IV and V)**

There is no dispute that Plaintiff was not handcuffed at any time during his detention. With one exception, there is no evidence that Plaintiff was physically abused or threatened with physical abuse. The sole exception is Plaintiff's testimony that an unidentified Border Patrol agent pushed Plaintiff into a truck for no apparent reason. [Doc. 80-9 at 13]

Under New Mexico law, for there to be an assault, "there must have been an 'act , threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery.'" *Baca v. Velez*, 114 N.M. 13, 15 (Ct. App. 1992). Liability for assault is imposed to protect the plaintiff's "freedom from apprehension of immediate and harmful or offensive contacts." Restatement (Second) Torts § 22, cmt. a (1965). Liability for battery is imposed to protect the plaintiff's "interest in freedom from intentional and unpermitted contacts with the plaintiff's person . . . ." *State v. Ortega*, 113 N.M. 437, 440 (Ct. App. 1992) (quoting *Prosser and Keeton on the Law of Torts* § 9 at 39-40 (5th ed. 1984).

There is no evidence that Plaintiff perceived a threat of force being applied to his person prior to being pushed against the truck. Thus, although the evidence supports Plaintiff's claim of battery, it does not support his claim of assault. Whether the unidentified agent's resort to force was justified is a matter as to which the United States bears the burden of proof. *See Restatement* § 118, cmt. b; *Prosser and Keeton*, *supra*, § 16. On the record before the Court, it cannot be said that a reasonable jury necessarily would find the agent's action in shoving Plaintiff against a truck to have been justified.

**Conclusion**

The United States has established its entitlement to summary judgment as to Counts II, III, IV. Plaintiff has demonstrated the existence of genuine disputes of material fact precluding summary judgment as to Count I (which the Court has interpreted as a claim for wrongful investigative detention), and Count V.

**WHEREFORE, IT HEREBY IS ORDERED** that the United States' Motion for Summary Judgment [Doc. 63] is **granted in part and denied in part**, and that Counts II, III, and IV of Plaintiff's Complaint are **dismissed with prejudice**.

So ordered this 24th day of February , 2015.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge