IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JOQUIN CESAR GALICIA,

        Plaintiff,

vs.                                                    Civ. No. 13-0105 MCA/LAM

THE UNITED STATES OF AMERICA,

        Defendant.


**MEMORANDUM OPINION AND ORDER**

      This case is before the Court upon the United States' Motion for Summary Judgment [Doc. 64]. The Court has considered the motion, the parties' briefs, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below the Court grants the motion.

      28 U.S.C. § 1346(b)(1) confers jurisdiction over claims brought under the FTCA in the district courts, which are to apply "the law of the place where the act or omission occurred." The parties agree that New Mexico is the place where the acts or omission at issue occurred.

      Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As our Court of Appeals has succinctly stated:

> A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations. *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

Viewing the record in the light most favorable to Plaintiff, as the nonmovant, the Court concludes that a reasonable jury could find as follows. On the evening of May 30, 2011, U.S. Border Patrol Agent Juan Serrano was patrolling New Mexico Highway 187 south of Truth or Consequences, New Mexico. As he approaches the intersection of Highway 187 and Caballo Alto, he notices a car lawfully parked beside the highway. The intersection of Highway 187 and Caballo Alto in the same general area where a suspect escaped from Border Patrol Agents earlier in the evening. Agent Serrano has no particular reason to think that the parked car is involved in a violation of the immigration laws. Because it is dark, he cannot immediately tell the race of the occupants. He nevertheless decides to stop and question the occupants of the car. He pulls up behind the car, engaging his emergency lights. He approaches the car on foot, and identifies himself

as a Border Patrol Agent. At this point Agent Serrano can tell that the occupants are a young woman, and a young man--Plaintiff. Agent Serrano immediately inquires into the occupants' citizenship. Plaintiff admits that he is not a United States citizen. Agent Serrano takes Plaintiff back to his patrol vehicle and orders him to sit in the back. Agent Serrano examines Plaintiff's shoes, apparently looking for evidence that Plaintiff has been travelling cross-country. Agent Serrano calls in on his radio, saying "I think we got the guy. We caught the guy that was running from us." Agent Serrano questions the young woman, who produces documentation showing that she is a lawful resident alien. Agent Serrano returns to his vehicle and runs a records check on the young woman. The records check confirms that the young woman is lawfully present in the United States. Based on Plaintiff's admission that he is in the United States illegally, Agent Serrano takes him into custody. He does not handcuff Plaintiff. Other Border Patrol agents arrive. Plaintiff is ordered out of Agent Serrano's vehicle. One of the newly arrived agents pushes Plaintiff into the side of a vehicle, prior to frisking Plaintiff. [Doc. 80-9 at 5] Agent Serrano transports Plaintiff to the Border Patrol station in Truth or Consequences, New Mexico. Plaintiff's companion is still being detained as Plaintiff and Agent Serrano depart. Plaintiff and Agent Serrano engage in casual conversation on the way back to the Border Patrol station.

    At the station, Agent Serrano begins processing Plaintiff, who he has identified as a minor. Plaintiff asks if he can telephone his aunt. Plaintiff is told that he needs to finish the paperwork and then Plaintiff can phone his aunt. Agent Serrano, not fully appreciating that Plaintiff has lived in the United States since he was five years old and is culturally

American, provides Plaintiff with a notice of his rights printed in Spanish, which Plaintiff has trouble understanding. An agent attempts to explain the form to Plaintiff in English. Plaintiff signs a Form I-770 consent to voluntary return. Plaintiff then is allowed to telephone his aunt. He is given a phone and allowed to speak to her privately. At times Plaintiff is kept in a holding cell by himself. At one point Plaintiff is removed from his cell and questioned about his relationship to a detainee arrested earlier in the evening in the same general area where Plaintiff was arrested. Plaintiff is seated in the same general area as the detainee during the questioning. Plaintiff is not threatened with physical abuse. While in his cell, Plaintiff overhears two agents discussing whether to provide Plaintiff with food. One agent is hostile towards Plaintiff and suggests that Plaintiff can wait to eat until he gets back to Mexico. Another agent disagrees and provides Plaintiff with a burrito, granola bar and juice. Plaintiff's aunt comes to the station, but the agents do not allow her to speak to Plaintiff. She gives the agents $200 for Plaintiff. Plaintiff's aunt asks if she can call a lawyer for Plaintiff. The agents say "no." The agents give Plaintiff the $200. Early in the morning of March 31, 2011, Plaintiff is transported to El Paso, Texas. Plaintiff is given a burrito and juice. Plaintiff is turned over to a representative from the Mexican Consulate, who escorts Plaintiff over a bridge into Juarez, Mexico.

New Mexico courts have adopted the approach of the Restatement (Second) Torts § 46 (1965), with respect to the tort of intentional infliction of emotional distress. *Trujillo v. Northern Rio Arriba Coop., Inc.*, 131 N.M. 607, 616 (2002). The IIED plaintiff must prove the following elements: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff;

(3) the plaintiff's mental distress was extreme and severe and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Id.* (quoting *Hakkila v. Hakkila*, 112 N.M. 172, 182 (Ct. App. 1991) (Donnelly, J.)) (internal quotation marks omitted).

In its Memorandum Opinion and Order addressing the United States' Motion for Summary Judgment as to Counts I through V, the Court denied summary judgment as to Plaintiff's claim that he was subjected to an unlawful *Terry* stop.  This unlawful detention lasted only a minute or so and terminated when Plaintiff admitted to Agent Serrano that he was unlawfully present in the United States.  This admission provided Agent Serrano with probable cause to detain Plaintiff, rendering the subsequent detention lawful.  New Mexico requires that the IIED plaintiff demonstrate conduct that is "so outrageous in character , and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Trujillo*, 131 N.M. at 616;  *see also* NMRA 13-1628 ("Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person.").  No reasonable jury could find that Agent Serrano's conduct in pulling up behind the car in which Plaintiff and his friend were sitting, engaging his emergency lights, and accosting Plaintiff and his friend about their immigration status was outrageous within the meaning of New Mexico law.

According to the Restatement, "conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances.  The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible

5

way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement § 46, cmt. g. Applying comment g, the Court concludes that the emotional distress experienced by Plaintiff from being arrested and detained prior to being returned to Mexico is not actionable as a matter of law because Agent Serrano had probable cause to believe that Plaintiff was in the United States in violation of the immigration laws of the United States. The actions of Agent Serrano in arresting and detaining Plaintiff were not outrageous because they were authorized by law.

The Court further concludes that the actions of the Border Patrol agents in removing Plaintiff to Mexico were not outrageous. There is no dispute that Plaintiff was not lawfully present in the United States. The Agents attempted to advise Plaintiff of his rights. Although Agent Serrano may have improperly insisted that Plaintiff sign the consent to voluntary removal prior to speaking to an adult, Agent Serrano did not physically threaten Plaintiff to obtain his consent. Ultimately, Plaintiff was allowed to speak in private to his aunt over the telephone. And after speaking with his aunt, Plaintiff did not ask to withdraw his consent to voluntary return, request a lawyer or a hearing, or otherwise object to being removed to Mexico. Plaintiff did not provide the Agents with any reason to believe that Plaintiff would be personally exposed to an unusual risk of physical harm if he were returned to Mexico.

Lastly, the Court concludes that the conditions under which Plaintiff was detained prior to being returned to Mexico were not outrageous. Plaintiff's testimony that he was shoved against a truck is disturbing. But this is the only instance of physical mistreatment in the record. Plaintiff was not handcuffed at any time, was provided with food, and when

6

he was not being processed or questioned was placed in a holding cell by himself, away from adult detainees.  He was allowed to telephone his aunt and speak with her over the phone in private.  He was given the money that his aunt brought to the station.  Although he was questioned by Border Patrol agents, who believed he was the second person who had absconded earlier in the day, there is no evidence that the agents subjected him to unduly harsh treatment.

One final point:  the Court's conclusion that Plaintiff has not made out a free-standing claim for IIED, does not preclude Plaintiff from seeking damages for emotional distress associated with those claims—false imprisonment and battery— that have survived summary judgment.  Restatement, *supra*, § 47, cmt. b (discussing "parasitic" damages for emotional distress);  NMRA 13-1628,  Use Note (recognizing  that emotional distress may be "an additional element of damages under the measure of damages for a compensable personal injury");  *see also* Dan B. Dobbs, et al., *The Law of Torts* § 47  (2d. ed.) (discussing damages for trespassory torts to the person).

**WHEREFORE, IT HEREBY IS ORDERED** that the United States' Motion for Summary Judgment [Doc. 64] is **granted** and that Count VI of Plaintiff's Complaint is dismissed with prejudice.

So ordered this 24th  day of February, 2015.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge